Opinion by
Porter, J.,
The plaintiff filed a mechanic’s lien against a church building and the lot appurtenant thereto, the legal title to which was in the defendant, naming the defendant as owner. A scire facias having issued upon the lien, the defendant filed an affidavit of defense, which the court below *407 held to be insufficient, and made absolute a rale for judgment; from which judgment the defendant appeals.
The claim filed by plaintiff averred the following material facts which the affidavit of defense expressly admitted to be true or entirely failed to deny. The defendant is a duly incorporated Presbyterian church and was and is the owner of the lot of ground in question; being desirous of estabhshing a mission, to be known as Mt. Calvary Mission, the corporation, in a meeting of the members thereof, known as a congregational meeting, did appropriate a sum of money for the purpose of erecting a church building, upon the said lot for the use of said mission. The affairs of the defendant corporation are managed and controlled by a board of trustees, elected by the members of the defendant corporation. The plaintiff prepared a complete set of plans and specifications for the construction of said church building, and also certain bids for the work involved in the erection of said building according to said plans and specifications and submitted the same to the board of trustees of the defendant corporation. The said board of trustees, on July 6,1909, accepted the said plans and specifications for the church building and also accepted the bid of Abel Bottoms & Son for the erection of the building in accordance with the plans and specifications, which bid the plaintiff, acting as architect, had obtained and submitted with the plans and specifications to said board. At a meeting of the members of the defendant corporation, in a congregational meeting duly convened and held, on August 17, 1909, the defendant corporation authorized the payment of the moneys previously appropriated by the defendant corporation for the erection of said mission building to the said contracter, Abel Bottoms & Son, on certificates signed by the architect, this plaintiff. Shortly after that date the board of trustees of the defendant corporation directed the claimant to confer with and be governed by the board of trustees of Mt. Calvary mission as to the details of the operation. The claimant, in accordance with said directions of the board of trustees of *408 the Chambers-Wylie Memorial Presbyterian Church, the defendant, submitted written proposals for the work in question to the trustees of Mt. Calvary Mission, which proposals provided for the compensation of the plaintiff, as architect of the proposed building, at rates distinctly specified, and the proposals so submitted were duly accepted and approved by the trustees of Mt. Calvary Mission. The plaintiff acted as architect of the building, supervised its erection and from time to time certified the bills of the contractors for the work, in the manner provided for by the contract. The claim averred that the charges of the plaintiff were the reasonable and ordinary charges of architects and that they were at the rates provided for in the proposals submitted, by direction of the board of trustees of defendant corporation, to the trustees of Mt. Calvary Mission.
The affidavit of defense, while not denying any of the above recited material facts, nor asserting that the plaintiff had agreed to waive his right of lien, nor that he had agreed to perform his services as architect gratuitously, asserted that plaintiff was not entitled to a hen for the following reasons:
“That defendant corporation had possessed in its own right a certain sum of money known as the mission fund, which the members of the defendant corporation desired to use for mission work in the Presbyterian faith. Accordingly the board of trustees of defendant corporation conferred, from time to time, with the board of trustees of Mt. Calvary Presbyterian Chapel, an unincorporated body located in West Philadelpha, which was a struggling mission without financial backing, and much in need of a new building. Said Mt. Calvary Chapel was under the care and control of the Presbytery of Philadelphia, and had absolutely no legal or actual connection with the defendant corporation. After several conferences the board of trustees of the defendant corporation reported to their congregation the condition of affairs of the Mt. Calvary Chapel, and recommended that the Chambers-Wylie Mis *409 sion Fund be expended in their aid. Thereupon a part of said fund was, by the authority of the congregation, invested in a lot of ground located near Mt. Calvary Chapel, and the congregation of said chapel procured their own architect, the said plaintiff, to submit plans and specifications to them for a new building, which plans and specifications, when submitted, they ratified, adopted and submitted to the defendant’s board of trustees for their approval, inasmuch as the said board were bound, before the mission fund left their hands, to see that its expenditure was providently and carefully planned. But in all interviews between the committees from the two boards of trustees it was understood, agreed, and expressly stated prior to the drawing of any plans and the commencement of any work, that the costs and charges, if any, of said plans and specifications would be paid by the said Mt. Calvary Chapel. . . . Deponent avers that plaintiff’s contract for compensation, if any such there be, exists not between plaintiff and defendant corporation, but between said plaintiff and Mt. Calvary Chapel. Deponent denies that the board of trustees of defendant corporation ever agreed to employ the plaintiff to supervise and superintend said building operation; but avers that any contract for compensation that the plaintiff may have is with the Mt. Calvary Chapel, and that plaintiff understood and expressly agreed that any charges of his would be upon Mt. Calvary Chapel or its board of trustees, and that the Chambers-Wylie congregation would not be responsible for any amount to said plaintiff.” There was attached to the affidavit of defense a copy of the contract with Abel Bottoms & Son, for the erection of the building, which taken in connection with the averments of the affidavit disclosed the following facts: the defendant, being the owner of the lot, undertook to aid the congregation of Mt. Calvary Chapel and entered into an arrangement with the board of trustees of that mission which provided for the erection upon the lot of a church building, for the work and materials in the erection of which the contractor was *410 to be paid $7,567. The defendant congregation was unwilling to assume responsibility for this entire amount and agreed to contribute only the sum of $5,200 towards payment of the cost of the building, the congregation of Mt. Calvary Chapel Mission was to furnish the balance of the fund necessary to carry the project to” completion. The defendant corporation agreed to furnish the lot and to pay $5,200 on account of the erection of the building, that was the limit of the amount for which it was to be liable. But by approving the contract with Bottoms & Son it expressly authorized the erection upon the lot which it owned of a building which was to cost $7,567. By approving the plans prepared by this plaintiff as architect when presented by the trustees of Mt. Calvary Chapel, as alleged in the affidavit of defense, it ratified the act of the board of trustees of the chapel in securing an architect. When it directed the plaintiff to consult with the board of trustees of Mt. Calvary Chapel as to the details of the operation, as alleged in the claim and not denied in the affidavit of defense, that was not only an express recognition of the plaintiff as the architect of the building which was being erected on the lot and of the right of the board of trustees of the chapel to employ him, but imposed upon the architect, the duty of obeying the instructions of the trustees of the chapel. The erection of the building was the joint undertaking of the defendant and the board of trustees of Mt. Calvary Chapel, and any agreement that the defendant should pay only a part of the sum which the contractor for the work and materials was to receive and that the balance of that sum and the amount to which the architect was entitled for his services should be paid by Mt. Calvary Chapel might be binding upon the parties to that agreement, but it could have no effect upon the right of parties who did the work to a lien upon the building. This plaintiff is not seeking to enforce a general obligation against the defendant corporation. He is merely seeking to enforce a lien upon a particular building, in the erection of which he performed services,
*411 The title to the lot is in. this defendant, but the defendant so dealt with this plaintiff that the latter was warranted in assuming that the Mt. Calvary Chapel Mission was authorized to make a contract for which the building would be liable to a lien, and that the building when completed would be the property of Mt. Calvary Chapel. The title of the defendant to the lot was not that of “a trustee under deed, will or appointment by the court,” within the meaning of the second section of the Act of June 4, 1901, P. L. 431; the defendant corporation had full authority to improve the lot, and any building which it erected upon it would be a subject of lien. The title of the defendant to the lot was a fee simple and if any trust relation has arisen between the defendant corporation and Mt. Calvary Chapel Mission, which would invest the latter with an interest in the property, it is merely because of the erection of the building to the cost of which it contributed. The first section of the Act of June 4, 1901, P. L. 431, provides: “The word owner means an owner in fee, a tenant for life or years; or one having an estate or interest in the property described in the claim, who by contract or agreement, express or implied, in person or by another, contracts for the erection, construction or removal of the structure or other improvement, or any part thereof.” This defendant clothed the board of trustees of Mt. Calvary Chapel with authority to make contracts relating to the erection of the building upon the lot in question, and, while under the averments of the affidavit of defense defendant would not be generally liable upon such contracts, the building is subject to a hen for the claim of this plaintiff.
The judgment is affirmed.